IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Vernesia Todd, ) | Civil Action No. 2:14-cv-1833-TLW-MGB |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, ) | **OF MAGISTRATE JUDGE** |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The Plaintiff, Vernesia Todd, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

Plaintiff was 39 years old on her alleged disability onset date of March 8, 2011. (R. at 16, 25.) Plaintiff claims disability due to, *inter alia*, degenerative disc disease of the cervical spine, degenerative joint disease of the left shoulder and knees, cubital tunnel syndrome, hypertension, and morbid obesity. (R. at 19.) Plaintiff has a high school education and has past relevant work as a machine operator, resident care aid, telephone sales representative, and cashier. (R. at 25, 61.)

Plaintiff filed an application for DIB on April 12, 2011. (R. at 16.) After her application was denied initially and on reconsideration, a hearing was held before an Administrative Law Judge (ALJ) on December 19, 2012. (R. at 16.) In a decision dated February 1, 2013, the ALJ found that Plaintiff was not disabled. (R. at 16-27.) The Appeals Council denied Plaintiff's request for review,

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

(R. at 1-5), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> (2) The claimant has not engaged in substantial gainful activity since March 8, 2011, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> (3) The claimant has the following severe impairments: degenerative disc disease of the cervical spine; degenerative joint disease of the left shoulder; degenerative joint disease of the knees; cubital tunnel syndrome; hypertension; morbid obesity (20 CFR 404.1520(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(b) except she needs an option to alternate between sitting and standing at thirty minute intervals. The claimant should only occasionally push and pull with her left upper, non-dominant extremity. She can occasionally climb ladders, ropes, or scaffolds, frequently climb ramps and stairs, frequently balance, stoop, kneel, crouch, or crawl, and occasionally crawl [sic]. The claimant should avoid concentrated exposure to extreme temperatures, wetness, and humidity, and she should avoid all exposure to unprotected heights and hazardous machinery.
>
> (6) The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> (7) The claimant was born on May 8, 1971 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).
>
> (8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

> (9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is "not disabled," whether or not claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
> (11) The claimant has not been under a disability, as defined in the Social Security Act, from March 8, 2011, through the date of this decision (20 CFR 404.1520(g)).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. See 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents her from doing substantial gainful employment. See 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. See 20 C.F.R. § 404.1520(a)(4); see also Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. See SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing her inability

3

to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). She must make a prima facie showing of disability by showing that she is unable to return to her past relevant work. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. See Grant, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. See id. at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Richardson v. Perales, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that the Commissioner's conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The Plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, Plaintiff asserts the Commissioner erred in rejecting the opinion of Dr. LeBlond, Plaintiff's treating physician; Plaintiff also asserts remand is required pursuant to the Fourth Circuit's opinion in Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011). (Dkt. No. 17 at 20-33 of 33.)

In the instant case, Plaintiff submitted new evidence in the form of letters from Dr. McHenry and Dr. LeBlond, both treating physicians, to the Appeals Council. Dr. McHenry is the surgeon who operated on Plaintiff after she sustained injuries in a motor vehicle accident; his June 5, 2013 letter provides as follows:

> I first treated Vernesia Todd in March 2011. She was injured in a motor vehicle accident. I performed a posterior cervical spinal fusion from C6-T2 for her injuries. Although she recovered well from the surgery, she continued to have neck pain and dysethesias in her bilateral hands as of the last time I saw her in April 2012. This is consistent with the nature of her original spinal cord injury. She suffered from a spinal cord injury due to bony disruption. This is certainly the type of problem that could cause continuing pain and dysethesias. In order to accurately quantify the extent of her chronic limitations of function, I would prefer for her to have a functional capacity evaluation. I do not have enough data to specifically quantify her limitations. It is difficult to predict what level of severity a person's residual symptoms will be following this type of injury. However, it is consistent with her clinical history and the nature of her original injury that she would continue to have neck pain that would cause her frequent interruptions to her concentration during the work day. It is also consistent with her condition that she would not be able to use her bilateral hands any more than occasionally during the work day. "Occasionally" was defined for me as no more than 1/3 total out of an 8 hour work day.

(R. at 649.)

Plaintiff also submitted an August 19, 2013 opinion from Dr. LeBlond, one of Plaintiff's treating physicians, to the Appeals Council. (See R. at 651.) Dr. LeBlond's letter states, *inter alia*,

> I have treated Vernesia Todd since 11/10/11. She was last seen in our office on 7/1/13. We treat her for chronic pain. Ms. Todd suffered an acute injury to her neck that has caused her lingering pain and limitations of function. It is fully consistent with the type of injury she suffered that she would continue to have chronic neck and arm pain that she describes. I am surprised that she has not been approved for disability benefits given the very serious nature of her original injury. I reaffirm that she would suffer from the limitations that I previously endorsed on questionnaires. I am basing my conclusions regarding her limitations of function on her clinical history including the nature of her original injury and a nerve conduction study that

>showed she has chronic radiculopathy in her arm. On clinical examination she has a great deal of numbness in her arm.
>
>Ms. Todd had a fusion from C6-T2. This alone would seriously affect her ability to function . . . because her neck has very limited mobility. She would not be able to turn, twist or look up and down any more than occasionally during the work day. If she attempted to work in any position, either sitting or standing/walking, her neck pain would become severe enough over the course of a few hours that she would start to experience interruptions to her concentration sufficient to frequently interrupt tasks. For this reason she would not be able to work a full 8 hour work day.
>
>Ms. Todd should not use her bilateral arms any more than occasionally during the work day. If she used her arms for any activity more than this her neck pain would be aggravated to the point where she would start to experience interruptions to her concentration sufficient to frequently interrupt tasks. I previously endorsed that she would not be able to use her bilateral arms any more than 25% of the time during an 8 hour work day, and that continues to be the case.
>
>Ms. Todd suffered a severe injury to her neck that required an extensive fusion surgery. I am confident that she would not be able to persist in any type of activity on an 8 hour per day, 5 day per week basis due to her severe neck and arm pain. She has been limited to the extent I describe above and on the questionnaires I previously completed throughout the time period I have treated her. . . .

(R. at 651.)

The Appeals Council considered this evidence submitted by the Plaintiff but "found that this information does not provide a basis for changing the Administrative Law Judge's decision." (R. at 2; see also R. at 4.) The Social Security regulations provide, *inter alia*,

>The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any *new and material* evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision. If you submit evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application. . . .

20 C.F.R. § 404.976(b)(1) (emphasis added); see also 20 C.F.R. § 404.970(b). "Evidence is new . . . if it is not duplicative or cumulative," and "[e]vidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins v. Sec'y, 953 F.2d 93, 96 (4th Cir. 1991) (citations omitted). In Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011), the Fourth Circuit held that where the treating physician in that case submitted a letter to the Appeals Council detailing

6

Plaintiff's injuries and recommending significant restrictions on Plaintiff's activity, it "simply [could not] determine whether substantial evidence support[ed] the ALJ's denial of benefits" because the ALJ, in rendering his decision, had specifically emphasized that the record before him did not include any restrictions from the treating physician. Meyer, 662 F.3d at 707. The Meyer court stated, *inter alia*,

> [N]o fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record. Assessing the probative value of competing evidence is quintessentially the role of the fact finder. We cannot undertake it in the first instance. Therefore, we must remand the case for further fact finding.

Id.

Based on a review of the evidence Plaintiff submitted to the Appeals Council, the undersigned is of the opinion that a remand is warranted. Although the instant case is not identical to Meyer, given that the ALJ did have some opinions from both treating physicians, remand is appropriate, particularly in light of Dr. McHenry's new opinion. The ALJ stated, *inter alia*,

> As for the opinion evidence, both Dr. McHenry and Dr. LeBlond have submitted physician statements in reference to the claimant's disability claim, ***but the statements reach vastly different conclusions*** (Exhibit 19F and 24F). Dr. LeBlond indicated that the claimant is permanently disabled. He opined that the claimant cannot push or pull more than five pounds, cannot repetitively lift, bend, or stoop, and would need to restrict movement in the neck (Exhibit 19F, p. 1-2). Conversely, Dr. McHenry opined that the claimant had a disability that [would] last for only six months. He indicated that as of September 2011, the claimant would be able to continuously sit, stand, walk, or drive, and that she can frequently lift, push, or pull up to seventy pounds, she can ***frequently*** bend, stoop, or ***reach***, and that the claimant can occasionally use a keyboard, grasp objects, or perform repetitive motions (Exhibit 19F, p. 7).
>
> I have considered the opinions and have given some weight, but no significant weight to any of them. Dr. LeBlond's opinion is contradicted by the objective medical evidence including his own treatment notes which show that the claimant has experienced no more than mild deficits in strength and that she has maintained sensation to light (Exhibit 21F, p. 3-4). Further, his notes show stable pain that does not require daily narcotics (Exhibit 21F, p. 1-2). ***Further, Dr. McHenry's notes indicate that the claimant has experienced significant improvement in her pain levels with medication and therapy*** (Exhibit 20F, p. 1-3). Dr. McHenry's opinion has not been given significant weight because it does not account for the claimant's impairments of obesity and knee pain.

7

(R. at 24-25 (emphasis added).)

With this additional evidence before the Appeals Council, it is no longer clear that Dr. McHenry and Dr. LeBlond reach vastly different conclusions, and the undersigned is unable to conclude the Commissioner's decision is supported by substantial evidence. Dr. McHenry's opinion from June of 2013 describes a limitation on concentration, but his original opinion does not opine as to Plaintiff's ability (or lack thereof) to concentrate. (See R. at 649, 566-72.) In addition, as to Plaintiff's complaints of pain, the ALJ stated,

> Regarding the claimant's pain complaints, the record shows that her pain is well controlled by her current treatment regimen, which is not fully consistent with her testimony during the hearing. Indeed, in April 2012, she was reported that her pain was so well controlled that she was not experiencing any pain (Exhibit 20F, p. 1-3). In August 2012, she reported that she was not taking her narcotic pain medication every night, and that she was getting good relief whenever she takes pain medication (Exhibit 21F, p. 1-2). Indeed, despite her pain, she has further reported that she can exercise and go to the gym, which is far more active than she described at the hearing (Exhibit 20F, p.2).

(R. at 24.) In concluding that Plaintiff's pain is well controlled, the ALJ refers to Exhibit 20F, which is the same exhibit to which Dr. McHenry refers to support his notation that Plaintiff "continued to have neck pain and dysthesias in her bilateral hands as of the last time [he] saw her in April 2012." (R. at 649; see also R. at 573-75.) Additionally, the ALJ refers to Exhibit 21F to support the proposition that Plaintiff "was not taking her narcotic pain medication every night." (R. at 24; see also R. at 590-91.) Of course, that same exhibit indicated that Plaintiff had run out of medications and had no insurance; the exhibit also indicates that Plaintiff was given prescriptions on paper "so she can price the prescriptions as she has no insurance." (R. at 590-91.)

Dr. McHenry's June 2013 opinion is inconsistent with the ALJ's RFC findings, and it also casts some doubt upon the ALJ's analysis of Plaintiff's pain. In short, there is a "'reasonable possibility that th[is] new evidence would have changed the outcome.'" Meyer, 662 F.3d at 705 (quoting Wilkins, 953 F.2d at 96). The undersigned therefore recommends a remand. See id. at 707 (reversing and remanding the Commissioner's decision because upon considering the whole record,

8

including the new evidence submitted to the Appeals Council, the court could not determine whether substantial evidence supported the ALJ's denial of benefits); see also Nelson v. Colvin, Civ. A. No. 9:13-cv-2791-RBH, 2015 WL 178128 (D.S.C. Jan. 14, 2015).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 17, 2015
Charleston, South Carolina

9